UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAUL MOORE,<br><br>Defendant. | Criminal Action No. 13-330 (JDB) |

FILED
DEC 15 2014
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION

Plainclothes police officers approached defendant Paul Moore while he stood outside drinking in "Simple City," a public housing project in Washington, D.C. Moore (maybe seeing the officers, maybe not) ran away. But he did not make it very far. The police chased him, picked up a gun that fell from his waistband when he went over a fence, caught him, and searched him, finding nineteen plastic baggies of crack cocaine and five ecstasy pills. Now, on the eve of his trial for, among other things, being a felon in possession of a firearm and possession with intent to distribute cocaine base, Moore hopes to keep this physical evidence from the jury. The government opposes Moore's motion and has filed two of its own: one seeking to admit evidence of Moore's prior crimes for purposes of proving his intent, knowledge, absence of mistake, etc.; and another seeking to admit similar evidence for purposes of impeaching him should he choose to testify at trial. Upon consideration of the parties' filings,[1] the arguments presented at a motions hearing held on November 14, 2014, and the applicable

---

[1] See Gov't's Mot. to Admit Def.'s Prior Convictions [ECF No. 9] ("Gov't's 609 Mot."); Def.'s Opp'n to Gov't's 609 Mot. [ECF No. 15] ("Def.'s 609 Opp'n"); Gov't's Supplemental Mot. to Gov't's 609 Mot. [ECF No. 33] ("Gov't's 609 Supplemental Mot."); Gov't's Mot. to Admit Def.'s Other Crimes Evid. [ECF No. 10] ("Gov't's 404(b) Mot."); Def.'s Opp'n to Gov't's 404(b) Mot. [ECF No. 14] ("Def.'s 404(b) Opp'n"); Def.'s Mot. to Suppress Tangible Evid. [ECF No. 25] ("Def.'s Mot."); Gov't's Opp'n to Def.'s Mot. [ECF No. 32] ("Gov't's Opp'n").

law, and for the reasons explained below, the Court will deny Moore's motion and grant both of the government's motions.

## BACKGROUND

On the evening of November 13, Moore was standing in a parking lot with several other men. An undercover officer observed the men drinking what "appeared to be . . . alcoholic beverages in public." Ex. 1 to Def.'s Mot. [ECF No. 25-1] ("Lally Aff.") at 2; see also Nov. 14, 2014 Mot. Hr'g Tr. [ECF No. 35] ("Tr.") at 8. The officer also saw one man "manipulating his waistband or adjusting an object in his waistband." Tr. at 12. At least two unmarked police cars soon arrived on the scene to investigate the undercover officer's suspicions, and several officers exited these vehicles. The officers were in "plainclothes," but they also wore tactical vests over their clothes that bore the word "POLICE" on the front and back in large, white letters. Id. at 11, 31–32. As Officer Kevin Lally approached the group of men, he saw Moore "grab[] at his waistband and turn[] away from the officers," a movement that Lally considered to be consistent "with the characteristics of an armed gunman." Lally Aff. at 2; see also Tr. at 16.

Before any of the officers could reach Moore, he "began to flee on foot in a full sprint away from the officers." Lally Aff. at 2; see also Tr. at 16. The police gave chase, one of them yelling commands like "Stop! Police!" as he ran. Lally Aff. at 2; see also Tr. at 75. But Moore ignored these orders, either because he did not hear them, or because he did not care to heed them. He instead hopped a chain-link fence, which caused the gun he was carrying to fall to the ground. Tr. at 19, 20–21. Officer Lally—the closest of the pursuers—"observed and heard" the (fully loaded) semi-automatic pistol hit the concrete, picked up the pistol, and continued chasing Moore. Lally Aff. at 2; see also Tr. at 20–21. Moore successfully scaled a second fence before four police officers cut off his escape and apprehended him. See Tr. at 24–25.

The officers then searched Moore. They found nineteen small plastic bags containing a white, rock-like substance that field-tested positive for cocaine, five yellow pills that were later determined to be ecstasy, and $339 in "small denominations that are consistent with earnings of street-level narcotics trafficking." Lally Aff. at 2; see also Tr. at 25, 49. After a records check revealed that Moore had previously pled guilty to two 2008 felony charges (possession with intent to distribute ecstasy and cocaine), the officers arrested Moore for being a felon with a firearm. Lally Aff. at 2.

It turns out that Moore's run-ins with the law extend beyond these 2008 convictions. He pled guilty to attempted possession with intent to distribute marijuana following a January 2002 encounter with police. Gov't's 404(b) Mot. at 2–3. He pled guilty to armed robbery and use of a handgun during the commission of a crime of violence following an October 2002 incident. Id. at 3–4. A difficult year for Moore continued when he pled guilty to unlawful possession of a firearm with an obliterated serial number after United States Marshals searched his apartment in November 2002. Id. at 4–5. And most recently, in June 2014, Moore pled guilty to attempted uttering (that is, check forgery). Gov't's 609 Supplemental Mot. at 2.

## DISCUSSION

A grand jury charged Moore with unlawful possession with intent to distribute cocaine base, simple possession of a controlled substance, unlawful possession of a firearm and ammunition by a convicted felon, and using, carrying, and possessing a firearm during a drug-trafficking offense. See Indictment [ECF No. 1] at 1. With trial for these charges on the horizon, the parties have filed several motions. First, Moore hopes to suppress the "tangible evidence" recovered during and after the November 13 chase—namely, the gun he dropped and the drugs police found in his pockets. And second, the government wants to use evidence of

Moore's prior crimes in two ways: for its case-in-chief under Federal Rule of Evidence 404(b), and for impeachment purposes under Rule 609. The Court will consider each motion in turn.

I.   <u>MOTION TO SUPRESS TANGIBLE EVIDENCE</u>

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Warrantless searches are "per se unreasonable under [that Amendment] . . . subject only to a few specifically established and well-delineated exceptions." <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967). Moore argues that the November 13 warrantless seizure of his gun and drugs falls into the "unreasonable" category. But he is wrong. Several "well-delineated exceptions" to the warrant requirement apply to this case.

Start with the gun recovered when Officer Lally chased Moore. "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant," <u>Horton v. California</u>, 496 U.S. 128, 134 (1990) (internal quotation marks omitted), so long as (1) the officer did not violate the Fourth Amendment in arriving at the place from which the object was viewed, (2) the object's incriminating nature was readily apparent, and (3) the officer had a lawful right of access to the object seized, <u>see id.</u> at 136–37. This case meets these requirements: Officer Lally was free to chase the fleeing Moore without running afoul of the Constitution, <u>see</u> <u>California v. Hodari D.</u>, 499 U.S. 621, 626 (1991) (chasing a suspect does not constitute a "seizure," and thus does not implicate the Fourth Amendment); the firearm Moore abandoned is obviously incriminating, <u>see</u> D.C. Code § 22-4504(a) ("No person shall carry within the District of Columbia . . . a pistol.")[2]; and Officer Lally was well within his rights to pick up Moore's gun

---

[2] The constitutionality of the District's public-carry handgun ban is the subject of ongoing litigation. <u>See</u> <u>Palmer v. District of Columbia</u>, --- F. Supp. 2d ---, 2014 WL 3702854, *7 (D.D.C. July 24, 2014) (holding unconstitutional D.C. Code § 22-4504(a)). But <u>Palmer</u> post-dates the seizure at issue here, and so it says nothing about the incriminating nature of Moore's gun on the night of November 13, 2013.

4

from the ground, see Payton v. New York, 445 U.S. 573, 587 (1980) ("[O]bjects such as weapons . . . found in a public place may be seized by the police without a warrant."). The police, in short, did not need a warrant to seize Moore's gun, and the government is therefore free to use that gun as evidence at trial.[3]

A similar story goes for the drugs found on Moore's person. "[I]t is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." United States v. Robinson, 414 U.S. 218, 224 (1973). And an arrest is lawful under the Fourth Amendment so long as probable cause supports it. See United States v. Watson, 423 U.S. 411, 417–24 (1976); see also Robinson, 414 U.S. at 235 ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.").

Probable cause is, of course, "a fluid concept[,] turning on the assessment of probabilities in particular factual contexts," Illinois v. Gates, 462 U.S. 213, 232 (1983), but—by any measure—this case meets the test. Consider the facts known to the officers by the time they seized Moore: an undercover officer had observed Moore standing with several men who appeared to be drinking alcohol outdoors (and Moore himself admitted that he was drinking, see Tr. at 41), which is a misdemeanor in the District of Columbia punishable by a stint in prison, see D.C. Code § 25-1001(a), (d); two officers had seen Moore adjust something around his waistband, which seemed consistent "with the characteristics of an armed gunman," Lally Aff. at 2; see also Tr. at 16; Moore had fled the scene after police arrived, and he refused to stop when

---

[3] Moore all but admits that the recovery of the gun in this case presents no constitutional problem. He writes that "[t]he disposal, dropping or other discarding of an item in the course of a police chase does implicate the Fourth Amendment, because the disposal was not the result of a seizure." Def.'s Mot. at 4 (citing Hodari D., 499 U.S. at 629). This sentence is clearly missing a "not" in the first clause—that is, the sentence should read "[t]he disposal . . . of an item in the course of a police chase does [not] implicate the Fourth Amendment." Otherwise, the second clause does not make sense. As Moore recognizes, then, Hodari D. stands for the proposition that the police can recover things discarded during a chase without violating the Constitution, because the Fourth Amendment is not triggered until police actually catch the fleeing individual.

ordered to, see Illinois v. Wardlow, 528 U.S. 119, 124 (2000) ("Headlong flight . . . is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); and Officer Lally had "observed and heard" a gun fall from Moore's waistband during the chase, Lally Aff. at 2; see also Tr. at 19; United States v. Goddard, 491 F.3d 457, 462 (D.C. Cir. 2007) ("Here, the officers had plenty of reason to suspect [defendant] had a weapon, which [defendant] concedes would justify a stop.").[4] Courts confronted with such scenarios do not hesitate to find probable cause, see, e.g., United States v. Tuten, 293 F. Supp. 2d 30, 32–33 (D.D.C. 2003) (finding probable cause where officers chased defendant and observed a gun in plain view), and this case is no different.[5]

This probable-cause conclusion sinks Moore's motion to suppress. As has been explained, "[i]t is the fact of the lawful arrest which establishes the authority to search, and . . . in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." Robinson, 414 U.S. at 235. Here, the officers' "reasonable" search produced the evidence Moore now hopes to suppress: nineteen baggies of drugs and five pills. The Constitution simply does not require the Court to keep this evidence from the jury's view.

Moore disagrees, but only because he quibbles with the facts in this case. He argues first that the police did not have a "reasonable articulable basis for stopping" him at the time they arrived in the parking lot, because—due to the time of day (evening) and the arrangement of the

---

[4] Officer Lally's recovery of the gun from Moore was made known to the other officers prior to the arrest and search of Moore. See Tr. at 79 ("Prior to [the apprehension and search] . . . Officer Lally had advised us while actually showing us a gun that he had recovered from Mr. Moore as he began to run.").

[5] Of course, probable cause and the search-incident-to-arrest doctrine are not the only possible justifications for Moore's stop and search. Under Terry v. Ohio, 392 U.S. 1 (1968), and its progeny, a police officer may—without a warrant—stop and search an individual when the officer reasonably suspects "that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous." Id. at 30. Here, based on the facts recited above, the Court has no trouble finding that reasonable suspicion existed sufficient to justify both the decision to stop Moore and the decision to search him, once stopped.

vehicles in the lot—the officers could not have seen him drinking alcohol or adjusting his waistband. Def.'s Mot. at 4–5, 6. But this argument gets him nowhere. For one thing, the government has offered convincing evidence regarding the officers' observations on November 13. The undercover officer was only forty-five feet away from Moore when he observed his suspicious behavior, and two different officers testified that the parking lot was well-lit with street lamps and floodlights from nearby buildings. See Tr. at 12, 73–74. The officers, in short, saw what they saw, and Moore has offered no credible evidence to controvert their testimony.[6] For another, these facts are immaterial to the Court's constitutional analysis. The law is clear that the Fourth Amendment did not come into play until the police actually apprehended Moore, and that happened well after the initial parking-lot encounter. See Hodari D., 499 U.S. at 629. In other words, the police did not need a "reasonable articulable basis for stopping" Moore in the parking lot, because they did not stop him in the parking lot.

Moore's second factual argument is similarly flawed. He contends that the police were in plainclothes and "had not identified themselves" at the time he ran away, meaning the fact that he fled "would not be sufficient to permit the officers to stop him." Def.'s Mot. at 5. But even if the Court were to credit Moore's version of events, his facts are irrelevant. No one has argued that Moore's flight, alone, justified his stop and search. He dropped a loaded weapon on the ground, after all. This fact plus his unprovoked flight, plus his public drinking, plus his suspicious waistband maneuvers surely places Moore's seizure and search on the reasonable side of the constitutional divide. See United States v. Edmonds, 240 F.3d 55, 60 (D.C. Cir. 2001)

---

[6] At the November 14, 2014 suppression hearing, Antonio Gray, a defense witness, testified that it was "[d]ark" at around 7:00 p.m. when the police officers arrived in the parking lot, and that the only lights in the area came from nearby parked cars. See Tr. at 58. But this does not suffice to rebut the officers' testimony. Gray is a less-than-credible witness—he is a long-time friend of Moore's, and he has at least one prior felony conviction to his name. See id. at 63; see also Fed. R. Evid. 609(a)(1)(A). Moreover, Gray suggested that at least some artificial light shone in the parking area (from the parked cars' headlights), so the Court has no reason to discount the officers' sworn testimony regarding their ability to see Moore and his compatriots.

("[E]ven though a single factor might not itself be sufficiently probative of wrongdoing to give rise to a reasonable suspicion [justifying a stop], the combination of several factors . . . may.").

## II. MOTION TO ADMIT EVIDENCE OF OTHER CRIMES PURSUANT TO RULE 404(b)

"Under the law of this circuit, Rule 404(b) is a rule of inclusion rather than exclusion, and it is quite permissive, excluding evidence only if it is offered for the sole purpose of proving that a person's actions conformed to his or her character." United States v. Long, 328 F.3d 655, 660–61 (D.C. Cir. 2003) (citation and internal quotation marks omitted). The Court can therefore admit other-acts evidence "so long as the evidence is offered for any other relevant purpose," United States v. Lawson, 410 F.3d 735, 741 (D.C. Cir. 2005), including "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2). But determining relevance to a non-character purpose is only the first step. The Court must also ask whether the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, . . . misleading the jury," or other considerations under Federal Rule of Evidence 403. Long, 328 F.3d at 662 (internal quotation marks omitted).

Each of the government's proposed "other crimes" clears the relevance hurdle. Consider first the two incidents involving drugs. In January 2002, police officers searched a car in which Moore was riding and found twenty ziplock bags containing marijuana under Moore's seat and two additional bags in his jacket pockets. Based on this conduct, Moore pled guilty to attempted possession with intent to distribute marijuana. Gov't's 404(b) Mot. at 2–3. The March 2008 incident is of a piece. In that instance, police pulled over Moore as he was driving a stolen vehicle. This time, Moore "got out of the car and fled on foot," but the officers caught him "nearby." Id. at 5. A search of the car revealed thirteen baggies of marijuana, six pills of

ecstasy, a plastic bag containing cocaine, several empty ziplock bags, and $190 in cash. Moore, as a result, pled guilty to possession with intent to distribute ecstasy and cocaine. Id. These incidents, involving similar drugs to the present case, similar storage methods, and the like, have significant probative value regarding Moore's "intent, preparation, plan, knowledge, . . . absence of mistake, [and] lack of accident"—all of which are permissible, non-character purposes for the evidence. Fed. R. Evid. 404(b)(2); see also, e.g., United States v. McCarson, 527 F.3d 170, 174 (D.C. Cir. 2008) ("prior convictions [for possession with intent to distribute] were not only relevant; they were also highly probative of both [the defendant's] intent to distribute the crack cocaine and his constructive possession of . . . the drugs").

Moore's two gun-related crimes are also relevant for non-character purposes. In the October 2002 incident, Moore followed a victim home, pointed a gun at the victim, hit the victim in the head with his gun, and then stole a duffel bag full of money from the victim. Gov't's 404(b) Mot. at 3. Moore later pled guilty to armed robbery and use of a handgun during the commission of a crime of violence. Id. And in November 2002, United States Marshals entered an apartment and found Moore trying to hide "behind [a] living room entertainment center." Id. at 4. During the subsequent search, police uncovered a handgun hidden in the couch and another firearm hidden in the kitchen. After his arrest, Moore pled guilty to unlawful possession of a firearm with an obliterated serial number. Id. Comparing these prior incidents to the present case—where Moore is charged with "knowingly us[ing] . . . and possess[ing] . . . a firearm" during a drug-trafficking offense, Indictment at 2—suggests various non-character purposes for this evidence. The government plans to use these two acts to show Moore's "intent" regarding the use of the recovered gun in this case, for example. Or the government might use these incidents to show that it was no "mistake" that Moore happened to possess a gun on November

13. In either scenario (or in different scenarios, altogether), Rule 404(b) does not bar admission of this evidence. See, e.g., United States v. King, 254 F.3d 1098, 1100 (D.C. Cir. 2001) ("[W]here a defendant is charged with unlawful possession of something, evidence that he possessed . . . similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged.")

The government's four proposed other crimes also survive a Rule 403 balancing test. As this Circuit has made clear, "Rule 403 does not bar powerful, or even prejudicial evidence. Instead, the Rule focuses on the danger of unfair prejudice, and gives the court discretion to exclude evidence only if that danger substantially outweigh[s] the evidence's probative value." United States v. Pettiford, 517 F.3d 584, 590 (D.C. Cir. 2008) (internal quotation marks and citations omitted). There is no such "substantial[] outweigh[ing]" in this case. On one side of the balance rests the "highly probative" nature of the government's other-crimes evidence, regarding Moore's intent and knowledge, for instance. McCarson, 527 F.3d at 174. And on the other side stands the risk that a jury will use this evidence improperly. But that risk exists in all 404(b) cases, and this Circuit has never adopted "a per se rule of exclusion" for such crimes. United States v. Crowder, 141 F.3d 1202, 1210 (D.C. Cir. 1998) (en banc). Because there is no "compelling or unique" evidence of prejudice here, United States v. Washington, 969 F.2d 1073, 1081 (D.C. Cir. 1992), the risk of unfair prejudice is better managed by jury instructions than by exclusion,[7] see Crowder, 141 F.3d at 1210.

Moore disagrees. He begins by questioning the validity of his underlying convictions. Regarding the January 2002 incident, for example, Moore notes that "[i]t is unclear whether the

---

[7] This is especially true here, where the government has agreed not to introduce evidence of the violent nature of Moore's October 2002 armed robbery, thereby removing from the balance one possible source of unwarranted prejudice. See Tr. at 97 ("I think what would be appropriate is to limit the evidence that comes in from that [crime]."); see also infra at 11–12 (limiting government's use of armed-robbery 404(b) evidence).

10

cannabis found on [Moore's] person would be enough to satisfy the distribution prong" of the 2002 possession-with-intent-to-distribute charge—presumably suggesting that the simple possession of marijuana in <u>that</u> case says nothing relevant about the intent-to-distribute charge in <u>this</u> case. Def.'s 404(b) Opp'n at 3. But Moore's suggestion changes nothing. For starters, Moore is also charged with simple possession of a controlled substance in the present case, so his previous possession of drugs is still relevant. <u>See</u> Indictment at 2. Moreover, Moore pled guilty to possession with intent to distribute following the 2002 incident, so there is no question that "the distribution prong" was satisfied in that case. <u>See</u> <u>United States v. Broce</u>, 488 U.S. 563, 570 (1989) ("By entering a guilty plea, the accused . . . is admitting guilt of a substantive crime.").

Moore persists that there are significant differences between his prior crimes and the current case, meaning the prior crimes are irrelevant. "Unless the gun in the [October 2002 armed-robbery] incident was the same type of gun in the current case," Moore writes, "that possession does not establish identity." Def.'s 404(b) Opp'n at 3. But there are several problems with this reasoning. First, Rule 404(b) has never required an exact match between the defendant's past actions and his present charges to satisfy the relevance test. <u>See</u> <u>King</u>, 254 F.3d at 1100 ("[E]vidence that [defendant] possessed . . . <u>similar</u> things is often quite relevant . . . with regard to the crime charged." (emphasis added)). Second, even a different gun used in a different crime can be relevant for certain purposes (e.g., intent, knowledge, absence of mistake) under 404(b)—as Moore comes close to conceding. <u>See</u> Def.'s 404(b) Opp'n at 3 ("[T]hat crime shows only that Mr. Moore possessed and used a firearm on a previous occasion.").

Finally, Moore argues that admitting his other-crimes evidence would be unduly prejudicial, because one of his crimes (the armed robbery) is a crime of violence, and because all of these incidents, taken together, threaten to "overwhelm[]" the present case. <u>Id.</u> at 3, 4–5. But

neither rationale is convincing. As has already been noted, the Court is well-equipped to manage any possible prejudice through limiting instructions and instructions to the jury. Accordingly, the government will be permitted to use Moore's armed-robbery conviction as 404(b) evidence only to show that he previously used a gun during the commission of a crime, and it will <u>not</u> be permitted to delve into the violent details of that crime (e.g., that Moore hit his victim with a handgun during the robbery). In addition, Moore's concern that the 404(b) evidence will "overwhelm" the charges in the present case is not enough to "substantially outweigh" the value of the government's evidence. <u>See</u> <u>United States v. Brown</u>, 597 F.3d 399, 407–08 (D.C. Cir. 2010) (rejecting argument that other-crimes evidence is unduly prejudicial where it accounts for "a large part of the government's case-in-chief"). The evidence is therefore admissible.[8]

### III.  MOTION TO ADMIT PRIOR CONVICTIONS PURSUANT TO RULE 609

The Federal Rules allow for the admission of a defendant's prior convictions for purposes of impeachment, so long as the "crime . . . was punishable by death or by imprisonment for more than one year" (that is, it was a felony), and "the probative value of the evidence outweighs its prejudicial effect." Fed. R. Evid. 609(a)(1). There are caveats to this rule, however. Even crimes that are not felonies—and that would significantly prejudice the defendant—can be introduced if conviction for the crime required proof of "a dishonest act or false statement." <u>Id.</u> at 609(a)(2). And more stringent limitations govern the use of prior convictions that are more than ten years old. <u>See</u> <u>id.</u> at 609(b). Here, the government wants to impeach Moore (assuming he testifies) with six of his prior convictions: five convictions stemming from several of the incidents described in the Court's 404(b) analysis, <u>see</u> Gov't's 609 Mot. at 1–2; <u>see also</u> <u>supra</u> at

---

[8] It is worth noting that the evidence is admissible in the government's case-in-chief. Moore contends that "there has been no representation at this point by the defense that innocent possession, mistake, or accident is the defense in the current case." Def.'s 404(b) Opp'n at 3. But the government need not wait for such a defense to arise before presenting its other-crimes evidence. Rather, it can "anticipate [such a] defense and introduce it in its case-in-chief." <u>United States v. Lewis</u>, 759 F.2d 1316, 1349 n.14 (8th Cir. 1985).

7–10, and one stemming from a more recent incident involving a forged check, see Gov't's 609 Supplemental Mot. at 1. All of these convictions pass the Rule 609 test(s).

To begin with, each of the government's proposed prior convictions is a felony, and one is both a felony and a crime involving false statements. A look at Moore's criminal record substantiates this point: a conviction for possession with intent to distribute cocaine (a felony), see D.C. Code § 48-904.01(a); a conviction for possession with intent to distribute ecstasy (a felony), see id.; a conviction for armed robbery (a felony), see Md. Code, Crim. Law, § 3-403; a conviction for use of a handgun during the commission of a crime of violence (a felony),[9] see id. § 4-204; a conviction for unlawful possession of a firearm with an obliterated serial number (a felony), see 18 U.S.C. § 922(k); and a conviction for attempted uttering (a felony), see D.C. Code § 22-3242(c). Moreover, when Moore pled guilty to his uttering offense, he admitted to "attempt[ing] to . . . certify . . . a falsely made and altered check." Ex. 1 to Gov't's 609 Supplemental Mot. [ECF No. 33-1] at 1 (emphasis added). Other courts have held that such "uttering" convictions fall under the false-statement umbrella. See United States v. Magoti, 352 F. App'x 981, 985 (6th Cir. 2009); United States v. Tracy, 36 F.3d 187, 192 (1st Cir. 1994). And this Circuit seems to agree. See United States v. Coats, 652 F.2d 1002, 1003 (D.C. Cir. 1991) (suggesting that "uttering" is "a crime involving 'dishonesty or false statement'").

None of these prior convictions implicates Rule 609's ten-years-or-more caveat. This is obvious for several of Moore's prior convictions: his 2008 convictions for possession with intent to distribute cocaine and ecstasy are not yet ten years old, nor is his 2014 attempted-uttering conviction. But Moore's other convictions require a bit more explanation. In June and

---

[9] Maryland actually considers this crime a "misdemeanor," but it is punishable by "not less than 5 years and not exceeding 20 years" of imprisonment. Md. Code, Crim. Law, § 4-204(c)(1)(i). Thus, whatever Maryland might call this offense, it is a "felony" within the federal definition of the word. See 18 U.S.C. § 3559(a) (classifying offenses based on "maximum [authorized] term of imprisonment").

13

November 2003, Moore was sentenced for three different crimes—armed robbery, use of a handgun during a crime of violence, and unlawful possession of a firearm with an obliterated serial number. See Gov't's 609 Mot. at 2 n.1–3. These convictions therefore appear to fall outside the ten-year window. But Rule 609 does not just rely on the date of <u>conviction</u> for its time calculations. Instead, the clock starts running based on the "witness's conviction [date] <u>or [his] release from confinement</u>, whichever is later." Fed. R. Evid. 609(b) (emphasis added). And for each of these convictions, Moore was "release[d] from confinement" less than ten years ago. His 2003 armed robbery conviction led to a ten-year prison sentence (though seven years of that sentence were suspended); his 2003 use-of-a-handgun conviction led to a fifteen-year sentence (with five years suspended); and his 2003 obliterated-serial-number conviction led to a two-year sentence. See Gov't's 609 Mot. at 2 n.1–3. This prison time shifts all of Moore's convictions inside the ten-year timeframe for purposes of Rule 609(b).[10]

The admissibility of Moore's prior convictions therefore turns on whether "the probative value of the evidence outweighs its prejudicial effect."[11] Fed. R. Evid. 609(a)(2). The D.C. Circuit has instructed that "all felonies have some probative value on the issue of credibility," although the precise value will depend on what the felony is and how stale the felony conviction has become. United States v. Lipscomb, 702 F.2d 1049, 1062 (D.C. Cir. 1983) (en banc). This

---

[10] The government also notes that Moore's probation/parole was revoked for each of his three older convictions, and the Maryland, District of Columbia, and United States courts therefore resentenced him (in 2012 and 2008) to additional jail time. Some courts have suggested that such parole and probation revocations can reset the Rule 609(b) clock. See, e.g., United States v. Gray, 852 F.2d 136, 139 (4th Cir. 1988) ("Gray's parole was revoked in 1979 for parole violations and he was still incarcerated at the time of trial. The ten year time limit . . . is therefore not applicable."); United States v. McClintock, 748 F.2d 1278, 1289 (9th Cir. 1984) ("We hold only that confinement imposed for substantive probation violations that implicate the original [crime] is 'confinement' for the original offense within the meaning of 609(b)."). The D.C. Circuit has not weighed in on this issue, though, and this Court need not address it now. As described above, Moore's confinement for each of these older offenses—even without his subsequent confinement for probation/parole violations—occurred less than ten years ago. This is enough to avoid Rule 609(b)'s more stringent admissibility standards.

[11] One of Moore's convictions (for attempted uttering) does not require any probative-value-versus-prejudice balancing. See United States v. Smith, 551 F.2d 348, 358–59 (D.C. Cir. 1976). According to the Federal Rules, it "must be admitted," regardless of any prejudice to Moore, because the crime involved a false statement. See Fed. R. Evid. 609(a)(2).

Circuit has also instructed district courts that they "should be reluctant to exclude otherwise admissible evidence that would permit an accused to appear before a jury as a person whose character entitles him to complete credence when his criminal record stands as direct testimony to the contrary." United States v. Lewis, 626 F.2d 940, 950 (D.C. Cir. 1980). Given these background principles, the government's proposed Rule 609 evidence passes the balancing test, for several reasons.

First, even though most of Moore's prior crimes do not involve explicit "dishonest act[s]" or "false statement[s]," these crimes still say something about his ability to be truthful while under oath. In Lipscomb, the en banc D.C. Circuit affirmed a district court's Rule 609 balancing act, because the defendant's prior robbery conviction (though it did not entail "stealth or deception") was a "serious crime that show[ed] conscious disregard for the rights of others." 702 F.2d at 1070–71. The conviction was therefore admissible under Rule 609—especially because the defendant's credibility was likely to be "central to the trial." Id. at 1071; see also United States v. Jackson, 627 F.2d 1198, 1209 (D.C. Cir. 1980) (listing "the importance of the defendant's testimony" as a factor in the Rule 609(a)(1) balancing test). That is this case: what Moore might say in his own defense—e.g., the gun wasn't mine, the drugs were for personal use—could play a significant role in the jury's verdict. Hence, the probative value of Moore's prior convictions is quite high.

Second, Moore has failed to argue that the admission of any single conviction would be so prejudicial as to tip the Rule 609 scales in his favor. Spurning specifics, he argues only that "the sheer number of prior convictions . . . outweighs their probative value on the issue of credibility." Def.'s 609 Opp'n at 1. To be sure, the admission of Rule 609 evidence is subject to the usual limitations regarding "needless presentation of cumulative evidence." Fed. R. Evid.

403; see also United States v. Estrada, 430 F.3d 606, 620–21 (2d Cir. 2005) (applying Rule 403 to the balancing analysis under Rule 609(a)(1)). But "[e]vidence is 'cumulative' when it adds very little to the probative force of the other evidence in the case," United States v. Williams, 81 F.3d 1434, 1443 (7th Cir. 1996), and Moore's prior convictions do not fit that description. He has been convicted of (at least) six different crimes, each of which tells the jury something slightly different about his credibility as a witness. Cf. Brown, 597 F.3d at 407 ("Each 404(b) witness . . . testified about different occasions . . . [which] did not implicate needless 'piling on' of cumulative evidence."). From the jury's point of view, in other words, each conviction knocks a brick from Moore's credibility wall—and so Moore has given the Court no basis to find that any single conviction should be considered cumulative.

Third, even if Moore had specifically argued that introducing this or that conviction for impeachment purposes would be unduly prejudicial,[12] the Court could not agree with him—not where it has already concluded that the jury should hear about these prior convictions under Rule 404(b). Moore's concern regarding prejudice is understandable. He worries that "the fact finder will consider the [prior] convictions as substantive propensity evidence rather than as impeachment." Def.'s 609 Opp'n at 1. But this concern ignores an important fact: the jury is already going to hear about these other crimes—likely in the government's case-in-chief. The prejudice Moore alleges, then, is not some new fear; it is one that has already been considered

---

[12] Moore could have argued, for example, that the government ought not impeach him with his 2008 convictions for possession with intent to distribute ecstasy and cocaine, because those prior convictions "are for the same crime" as the present case. The D.C. Circuit has explained that such convictions "should be admitted sparingly." Gordon v. United States, 383 F.2d 936, 940 (D.C. Cir. 1967). This argument does not appear anywhere in Moore's briefs, however, and—even if it did—it would not change the outcome in this case. The potential prejudice that comes from admitting these same-crime prior convictions is minimal when the jury has already been exposed to those prior convictions for some other purpose. See, e.g., United States v. Chauncey, 420 F.3d 864, 874 (8th Cir. 2005); United States v. Lattner, 385 F.3d 947, 961 (6th Cir. 2004).

and dealt with in the Court's Rule 404(b) analysis.[13] See supra at 10–12. "Thus any incremental prejudice flowing from the use of [Moore's] convictions for impeachment purposes . . . [must] be[] minimal." United States v. Mahler, 579 F.2d 730, 736 (2d Cir. 1978); see also United States v. Chauncey, 420 F.3d 864, 874 (8th Cir. 2005) ("Here, the prior conviction already was admitted under Rule 404(b), and the danger of unfair prejudice by repetition of the evidence was negligible."); United States v. Lattner, 385 F.3d 947, 961 (6th Cir. 2004) ("[T]he prejudicial effect of the evidence was minimal, as the prosecution had already properly introduced, under [Rule] 404(b), evidence of [defendant's] prior involvement in drug transactions."). Therefore, because the probative value of this impeachment evidence is high, and the corresponding prejudice is low, the Court—with appropriate instructions to the jury—will allow the government to use Moore's prior convictions during cross-examination if he testifies. See Lewis, 626 F.2d at 950.

## CONCLUSION

The Court will deny Moore's motion to suppress and grant the government's two motions. The government may therefore use at trial the physical evidence seized on November 13, 2013, and may use Moore's prior convictions for both Rule 404(b) and Rule 609 purposes. A separate Order has issued on this date.

/s/
_____
JOHN D. BATES
United States District Judge

Dated: December 15, 2014

---

[13] The balancing tests for Rule 404(b) and Rule 609 evidence are, of course, different. The former allows the admission of prior convictions so long as the "probative value is [not] substantially outweighed by a danger of . . . unfair prejudice," Fed. R. Evid. 403; the latter allows the admission of such evidence so long as "the probative value of the evidence outweighs its prejudicial effect," id. at 609(a)(1)(B). But both tests require the Court to weigh defendant's alleged "prejudice." And here, Moore's alleged prejudice is the same whether the evidence comes in pursuant to Rule 404(b) or Rule 609. Therefore, the Court's "prejudice" calculation under Rule 403 is certainly relevant to its calculation under Rule 609.