**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

**v.**

**PAUL MOORE, JR.,**

**Defendant.**

**Criminal Action No. 13-330 (JDB)**

**MEMORANDUM OPINION**

On July 16, 2015, defendant Paul Moore, Jr., pleaded guilty to unlawful possession with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). A first draft of the Presentence Investigation Report concluded that Moore qualified as a "career offender" under § 4B1.1 of the United States Sentencing Guidelines. Moore disagreed with that assessment and requested the opportunity to brief the issue before sentencing. The Court granted his request and has now received and reviewed the parties' filings. See Def.'s Sentencing Mem. Addressing "Career Offender" Issue [ECF No. 60] ("Def.'s Mem."); Gov't's Mem. in Aid of Sentencing [ECF No. 62] ("Gov't's Resp."); Def.'s Sentencing Mem. in Reply [ECF No. 64] ("Def.'s Reply"). This opinion explains why the Court concludes that Moore is indeed a career offender under the Guidelines.

* * *

Section 4B1.1 provides for an increased offense level if a defendant is found to be a "career offender." To be a career offender, a defendant must (among other things) have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). Moore does not dispute that one of his prior convictions qualifies as a controlled substance offense. But he says that another prior conviction—for armed robbery under Maryland

law—does not qualify as a crime of violence, and hence he does not qualify as a career offender under the Guidelines.

Section 4B1.2 of the Guidelines contains the critical definition:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). In deciding whether Moore's crime of conviction fits within this definition, the Court must employ what is known as the "categorical approach." "Under the categorical approach, a court assesses whether a crime qualifies as a [crime of violence] in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." Johnson v. United States, 135 S. Ct. 2551, 2557 (2015) (internal quotation marks omitted).

But before turning to how Maryland law defines the offense Moore committed, the Court must address the impact of the Supreme Court's recent Johnson decision. That case addressed the Armed Career Criminal Act (ACCA), which contains a definition of the term "violent felony" that is nearly identical to the Guidelines' definition of "crime of violence." See 18 U.S.C. § 924(e)(2)(B). Johnson held that the final, so-called "residual clause" of the definition—"or otherwise involves conduct that presents a serious potential risk of physical injury to another"—is void for vagueness under the Due Process Clause. 135 S. Ct. at 2557–63. The United States has conceded here (and in every case, it seems) that Johnson's void-for-vagueness holding applies with equal force to the residual clause in the Guidelines' definition of "crime of violence." Gov't's Resp. at 4 n.2. The question thus becomes whether Moore's offense qualifies as a crime of

violence even after the residual clause has been struck from the definition in § 4B1.2(a)(2). See United States v. Soto-Rivera, 811 F.3d 53, 59 (1st Cir. 2016) (accepting the Government's concession that "the residual clause [is] out of the picture").

As mentioned, Moore was convicted of robbery. More specifically, he pleaded guilty to robbery with a dangerous weapon in violation of Maryland Criminal Law § 3-403. That provision forbids a person "to commit or attempt to commit robbery under § 3-402 of this subtitle: (1) with a dangerous weapon; or (2) by displaying a written instrument claiming that the person has possession of a dangerous weapon." Md. Crim. Law § 3-403(a). Because this is a so-called "divisible statute," in that it "sets out one or more elements of the offense in the alternative," the Court is permitted under the "modified categorical approach" to look at Moore's indictment and plea colloquy to determine under which alternative his conviction falls. Descamps v. United States, 133 S. Ct. 2276, 2281–82 (2013). Here it is clear that Moore's conviction came under the first alternative: robbery with an actual dangerous weapon, not merely a "written instrument." See, e.g., Ex. B to Gov't's Resp. [ECF No. 62-2] at 12 (Moore admitting during plea colloquy to the "use of a handgun in the commission of a felony").

Moore tries to downplay the "with a dangerous weapon" aspect of his conviction, contending that it "is merely a sentencing factor, not an element" of his offense, and that the Court's focus under the categorical approach should be on simple robbery. Def.'s Reply at 1–2. Moore is wrong, however. True enough, the Maryland Court of Appeals has said that §§ 3-402 and 3-403 "do not create separate statutory offenses but merely fix the penalties for one crime of robbery, aggravated if committed with a deadly weapon." Bowman v. State, 552 A.2d 1303, 1305 (Md. 1989) (citing predecessor code provisions). But as a matter of federal law, the use of a deadly weapon is clearly an element of a distinct offense. That is so because the use of a deadly weapon

increases the maximum penalty from 15 years to 20, compare Md. Crim. Law § 3-402(b) with id. § 3-403(b), and "any facts that increase the prescribed range of penalties to which a criminal defendant is exposed are elements of the crime," Alleyne v. United States, 133 S. Ct. 2151, 2160 (2013). As a matter of federal constitutional law, then, Moore could not have been exposed to that heightened penalty unless a jury concluded beyond a reasonable doubt—or, as actually happened, Moore admitted in his plea—that he had used a deadly weapon. See United States v. Booker, 543 U.S. 220, 244 (2005). Robbery with a dangerous weapon is the crime Moore pleaded guilty to, and so the question is whether that crime—not simple robbery—is a crime of violence under the Guidelines.

As noted, § 3-403 defines Moore's crime as the commission of "robbery under § 3-402 of this subtitle . . . with a dangerous weapon." The meaning of "robbery" in § 3-402 is in turn governed by the definition in § 3-401, which says that " '[r]obbery' retains its judicially determined meaning" (with certain exceptions not relevant here). Md. Crim. Law § 3-401(e). That "judicially determined meaning," the Maryland Court of Appeals has explained, is as follows: "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence, or by putting him in fear." Coles v. State, 821 A.2d 389, 394 (Md. 2003) (internal quotation marks omitted). Importantly for present purposes, the Maryland Court of Appeals has further explained that "[t]he hallmark of robbery . . . is the presence of force or threat of force, the latter of which also is referred to as intimidation." Id. at 395 (emphasis added); see also Spencer v. State, 30 A.3d 891, 898 (Md. 2011) ("Common law robbery has a long history of requiring the State to prove either the use of force or the threat of force . . . ."). Hence, it certainly appears at first blush as though, in the words of the Guidelines, Maryland robbery (even without a dangerous

weapon) "has as an element the use, attempted use, or threatened use of physical force against the person of another," and is therefore a crime of violence. U.S.S.G. § 4B1.2(a)(1).

Moore's first major counterargument is that Maryland robbery does not categorically involve force directed "against the person of another" because it can be accomplished by putting someone in fear of injury to his property, rather than to his person. Def.'s Mem. at 6. But the Court does not think this is correct. Moore's only support for the proposition that threats to property are sufficient under Maryland law is two intermediate appellate court opinions from 1970. See Douglas v. State, 267 A.2d 291, 295 (Md. Ct. Spec. App. 1970); Giles v. State, 261 A.2d 806, 807 (Md. Ct. Spec. App. 1970). Neither case actually involved threats against property, and Moore has cited no Maryland case that did. More importantly, Moore overlooks Spencer v. State, in which Maryland's highest court said that "when considering whether there has been a threat of force or intimidation," the test is "whether an ordinary, reasonable person under the circumstances would have been in fear of bodily harm." 30 A.3d at 898 (emphasis added). This formulation of the relevant inquiry, combined with the fact that the statements in Douglas and Giles appear never to have been followed, leads the Court to conclude that Maryland robbery requires the use or threat of force against a person.*

But even if threats to property are sufficient, Maryland robbery with a dangerous weapon is still a crime of violence. That is so because any instances in which it is committed through a threat to property would qualify as "extortion" within the meaning of the definition of "crime of violence." U.S.S.G. § 4B1.2(a)(2) ("burglary of a dwelling, arson, or extortion" are crimes of violence). The Supreme Court has indicated that the generic definition of extortion is "obtaining

* Casting further doubt on the continued reliability of Giles (and in turn of Douglas, which relied exclusively on Giles for this point) is Giles's suggestion that robbery could be committed by means of an accusation of "sodomy." 261 A.2d at 808 n.1. Moore does not suggest that is a correct statement of Maryland law or a reason that Maryland robbery is not a crime of violence.

something of value from another with his consent induced by the wrongful use of force, fear, or threats." Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 409–10 (2003); see also James v. United States, 550 U.S. 192, 223–24 (2007) (Scalia, J., dissenting) ("I therefore assume that extortion under ACCA is: the obtaining of something of value from another, with his consent, induced by the wrongful use or threatened use of force against the person or property of another."). Moore's fanciful hypotheticals of threats to property—e.g., "threatening to shoot bullets into one's yacht," Def.'s Reply at 19—would qualify as extortion under this definition. (And so would, incidentally, his hypotheticals of robbery by threats of poison, withholding insulin, locking in a freezer, etc. Id. at 14.) If the only methods of committing the crime that do not fit within the force clause of § 4B1.2(a)(1) do fit within "extortion" in § 4B1.2(a)(2), then the crime remains a crime of violence. See, e.g., United States v. Harris, 572 F.3d 1065, 1066 (9th Cir. 2009) (per curiam) ("[A]ny conduct under Nev. Rev. Stat. § 200.380 that did not satisfy the generic definition of robbery, such as threats to property, would satisfy the generic definition of extortion.").

Moore's responses to this extortion point miss the mark. He says Maryland robbery cannot equal generic extortion because Maryland robbery does not have the element of consent. But the Court's point is not that Maryland robbery categorically equals generic extortion. The Court readily concedes it does not. For example, a mugger who clubs an unsuspecting victim into unconsciousness and then steals his wallet has committed robbery but not extortion. The point is that any methods of committing robbery through threats that do not fit within the force clause of § 4B1.2(a)(1) do qualify as extortion. Nor is Moore aided by United States v. Dixon, 805 F.3d 1193 (9th Cir. 2015), in which the Ninth Circuit recently concluded that California robbery is not a violent felony under ACCA, even under the combination of the force clause and extortion. The Ninth Circuit's conclusion rested on a quirk of California robbery law—namely, that it can be

committed through an accidental use of force. Because of that possibility, Dixon concluded that there was "one narrow class of [California robbery] violations that do not satisfy the ACCA's definition of 'violent felony': those in which (1) the taking is not consensual (thereby failing the definition of generic extortion); and (2) the defendant uses force against a person, but only accidentally or negligently, rather than intentionally (thereby failing the element test of [ACCA's force clause] as interpreted by [precedent requiring the intentional use of force])." 805 F.3d at 1197. But Moore has identified no precedent (nor is the Court aware of any) suggesting that Maryland robbery shares this characteristic.

That brings us to Moore's second major counterargument—his contention that the "force" that must be used or threatened in Maryland robbery need not rise to the level of the "physical force" required by the Guidelines. See Def.'s Mem. at 8–11. As Moore correctly notes, the Supreme Court has held that "physical force" in the analogous ACCA provision demands more than the "force" sufficient for common-law battery, which requires only "the slightest offensive touching." Johnson v. United States, 559 U.S. 133, 139 (2010). "Physical force," the Court held, "means violent force—that is, force capable of causing physical pain or injury to another person." Id. at 140. Moore contends that Maryland robbery can be committed through the type of force sufficient for common-law battery and therefore does not categorically involve "physical force" of the sort necessary to make it a crime of violence.

That may or may not be true for simple robbery, but Moore was convicted of robbery with a dangerous weapon. That means he committed robbery with an instrument that was either: (1) "designed to be used in destroying, defeating, or injuring an enemy, or as an instrument of offensive or defensive combat"; (2) "under the circumstances of the case, immediately useable to inflict serious or deadly harm (e.g., unloaded gun or starter's pistol useable as a bludgeon)"; or (3)

"actually used in a way likely to inflict that sort of harm (e.g., microphone cord used as a garrote)." Brooks v. State, 552 A.2d 872, 880 (Md. 1989) (internal quotation marks and citations omitted). This Court does not see how robbery by means of any such instrument could not involve the use, attempted use, or threatened use of "force capable of causing physical pain or injury to another person." Johnson, 559 U.S. at 140.

Moore's argument to the contrary is that the dangerous weapon could be something like "poison, hazardous chemicals, [or] even pepper spray," the use of which "does not require strong physical force." Def.'s Reply at 23. The Court disagrees. To start, the employment of even such indirect weapons entails the "use of force," as the Supreme Court recently made clear. In the case of poisoning, for instance,

> [t]he "use of force" . . . is not the act of sprinkling the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter. [Otherwise], after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

United States v. Castleman, 134 S. Ct. 1405, 1415 (2014) (internal quotation marks and brackets omitted). To be sure, Castleman did not say that all such uses of force were necessarily uses of "physical force" within the meaning of Johnson, see Castleman, 134 S. Ct. at 1414, but the important initial point is that indirect weapons (poisons, chemicals, biological agents) are not categorically non-forceful. See United States v. Rice, 2016 WL 537589, at *2 (8th Cir. Feb. 11, 2016) (interpreting Castleman similarly); United States v. McDaniels, 2015 WL 7455539, at *5 (E.D. Va. Nov. 23, 2015) (same). Whether the use of any such instrumentality rises to the level of "physical force" under Johnson is just a question of how harmful it is. And the bar is not as high as Moore seems to think, since the weapon must simply be "capable of causing physical pain or injury." Johnson, 559 U.S. at 140. Not agony—just pain. Not mutilation—just injury. The

use of pepper spray, for instance, easily satisfies this standard. (Pepper spray would hardly serve its purpose if it did not cause the sprayee pain.) Given Maryland's definition of "dangerous weapon," the Court cannot see how it is possible to commit robbery with a dangerous weapon without the use, attempted use, or threatened use of the level of force specified by Johnson.

To summarize: Maryland robbery with a dangerous weapon necessarily entails the threat or use of force. To the extent it can be committed through a threatened use of force against property—which the Court doubts—it qualifies as generic extortion under the Guidelines. When the threat or use of force is directed against a person, the fact that the defendant employed a dangerous weapon means that force threatened or used was "physical force," i.e., force capable of causing physical pain or injury. That is true even for poisons, gases, and the like. Maryland robbery with a dangerous weapon is therefore a crime of violence under § 4B1.2 of the Guidelines. And for that reason, Moore qualifies as a career offender.

/s/

JOHN D. BATES
United States District Judge

Dated: March 4, 2016